IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES DORN, #N90855, | |
| Plaintiff, | Case No. 22-cv-02378-SPM |
| v. | |
| ROB JEFFREYS, LISA WEITEKAMP, DAVID W. MITCHELL, TRAVIS BAYLER, ANN LAHR, LIEUTENANT WRANGLER, JOHN DOE 1, *correctional officer,* JOHN DOE 2, *lieutenant head of Internal Affairs Unit,* CHAD E. WALL, BRADLEY A. KIRKMAN, JOHN DOE 3, *placement officer,* OFFICER VOUHN, JOHN DOE 4, *Internal Affairs officer,* OFFICER JURKOWSKI, C. HALE, A. HILL, OFFICER URASKI, and JEFF SPENCER, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff James Dorn, a transgender inmate of the Illinois Department of Corrections who is currently incarcerated at Hill Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of her constitutional rights that took place at Lawrence Correctional Center and Pinckneyville Correction Center. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is

Page 1 of 14

legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### PRELIMINARY MATTERS

In addition to filing the Complaint, Dorn has filed almost two hundred pages of exhibits. Dorn references these exhibits throughout her Complaint, and in support of assertions will write "see" and list attached exhibits. "While the Court may consider documents attached to a complaint, it is the plaintiff's burden to plead a short and plain statement of the claim." *Daniels v. Regal,* 2022 WL 2916569, at *1 (July 25, 2022) (citing FED. R. CIV. P. 8(a)(2); *Williamson v. Curran,* 714 F.3d 432, 436 (7th Cir. 2013)). At the pleading stage, the Court will not sift through the exhibits and "try to discern their potential relevance" or whether a viable claim exists. *Id.* (citing *Kadamovas v. Stevens,* 706 F.3d 843, 844 (7th Cir. 2013)). The Court will only review the allegations and claims asserted in the Complaint.

### THE COMPLAINT

Dorn alleges the following: At some point in time, she held a high-ranking position in a Security Threat Group ("STG") called the Vice Lords. (Doc. 1, p. 16). The members of the Vice Lords "found out [she was] homosexual" and put a "hit on her." (*Id.* at p. 17). For the past few years, she has remained fearful of her safety.

Prior to being transferred to Lawrence Correctional Center ("Lawrence"), Dorn was housed at Pontiac Correctional Center ("Pontiac") in protective custody. (Doc. 1, p. 17). During her time at Lawrence, Dorn wrote grievances alerting officials of the threat to her safety. In 2021, she sent a letter to Governor Pritzker stating that her life was in danger, and the grievance officials at Lawrence were not "doing there [sic] job." (*Id.* at p. 15). The letter was forwarded to Weitekamp,

Administrative Review Board Manager. (*Id.* at 12, 15). Weitekamp responded to the letter stating she spoke with Internal Affairs at Lawrence, and there was no threat. (*Id.* at p. 16). Because Weitekamp did not do her job, Dorn was eventually "assaulted" and "spit on." (*Id.* at p. 17).

Dorn was transferred to Pinckneyville Correctional Center ("Pinckneyville") in June or July 2021. (Doc. 1, p. 17). After her transfer, she told Internal Affairs Officer Vouhn that she was in danger by other members of the Vice Lords STG. She told him that she felt safe at Pontiac in protective custody but while at Lawrence she feels like she is "running for fear of [her] life." Vouhn told Dorn that he would "get back" to her, but he never did. (*Id.* at p. 17-18). Because Vouhn did not do his job, Dorn states she was "assaulted" and "spit on for what [she] once was." (*Id.* at p. 18).

On August 10, 2021, Dorn refused to be housed with another inmate named "Philip a.k.a. Turtle" because of "the threats from Vice Lords cellmate (guys)." (Doc. 1, p. 18). Dorn was placed in isolated housing. When she was released, on August 23, 2021, she was told she was being placed back in the same cell with Philip. (*Id.*). Dorn told the sergeant, who was sitting right by the door to the wing, that she had written an emergency grievance, and her life was in danger by going back into the cell with Philip. She was also in danger of being placed in that cell because there was another member of the Vice Lords housed in that same wing who had asked Dorn to "come to the yard." (*Id.* at p. 19). The sergeant told Dorn to go back to isolated housing. Dorn met with John Doe 4 Officer from Internal Affairs. Dorn informed John Doe 4 that her life was in danger if she moved into the cell with Philip. (*Id.* at p. 19). She was placed back in isolation. John Doe 4 did not put a "keep away" order concerning Dorn and Philip in Dorn's record. Dorn then received a disciplinary ticket written by Correctional Officer Jurkowski for disobeying a direct order. Jurkowski recorded that he gave Dorn a direct order to accept the cell assignment, and Dorn refused. Dorn refutes this account and states she never entered the building and only spoke with

the sergeant on duty. (*Id.* at p. 20).

The disciplinary ticket was heard on August 28, 2021, by Correctional Officer John Doe 1. (Doc. 1, p. 20). Dorn gave John Doe 1 her statement of not guilty. John Doe 1 stated he would give the statement to the lieutenant and that she would receive the results in the mail. Dorn received a falsified Adjustment Committee Report from Wall, the Chairperson of the Adjustment Committee, and Kirkman, a member of the Adjustment Committee. (*Id.* at p. 13, 20). The report stated that Wall and Kirkman, not John Doe 1, heard the disciplinary ticket and found Dorn guilty. Dorn received 20 days of day room restriction as a punishment. (*Id.* at p. 21).

On January 27, 2022, Dorn again was placed in a cell with inmate Philip. (Doc. 1, p. 21). After moving into the cell, Dorn showed the sergeant on duty three grievances she had written. After reviewing the grievances, the sergeant responded that there was "no way" Dorn and Philip should be housed together. Philip was moved to a different cell. The next day, John Doe 3, a placement officer, tried to place Philip back in the same cell with Dorn. Philip refused, and John Doe 3 moved Philip to a different cell. (*Id.*).

On May 15, 2022, Dorn was spit on and assaulted by an inmate named Minor, who told Dorn she was a disgrace to the Vice Lords. (Doc. 1, p. 25). Dorn wrote grievances about the incident and continued to complain that her life was in danger. (*Id.* at p. 25). Dorn appealed the grievances to the Administrative Review Board ("ARB") and requested to be transferred to protective custody at Pontiac. Baylor, a member of the ARB, did not address her issues. (*Id.*).

On May 27, 2022, Dorn was called to speak with Internal Affairs Officer Uraski who took Dorn's statement about the altercation with inmate Minor. (Doc. 1, p. 25). Uraski lied and told Dorn she would be placed under investigation and approved for protective custody. But following twenty-nine days of investigation, Dorn was moved to Hill Correctional Center, as a disciplinary transfer. (*Id.* at p. 25-26).

**PRELIMINARY DISMISSALS**

Dorn describes John Doe 2 as a lieutenant who is part of administrative staff and head of the Internal Affairs Unit. (Doc. 1, p. 29). She claims all issues and decisions by staff members must first be approved by John Doe 2. Defendant Jeffreys is described as the director of the Illinois Department of Corrections. (*Id.* at p. 10). Other than these descriptions, Dorn does not provide any factual allegations regarding how these individuals were personally involved in any constitutional violations. To be held liable under Section 1983, a person must "have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). John Doe 2 and Jeffreys cannot be culpable simply because they hold supervisory positions. The doctrine of *respondeat superior* does not apply to actions filed under Section 1983. Accordingly, as there are no claims against John Doe 2 and Jeffreys, they are dismissed.

Additionally, against several Defendants, Dorn asserts conspiracy and *respondeat superior*. "Bare assertions and conclusory allegations that the officials conspired with each other" fail to state a claim, *Maus v. Lade,* No. 22-2085, 2023 WL 334792, at *2 (7th Cir. Jan. 20, 2023), and as stated, there is no *respondeat superior* liability under Section 1983. Therefore, these claims are dismissed as well.

**DISCUSSION**

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** Fourteenth Amendment claim against Mitchell, Wall, Kirkman, Jurkowski, John Doe 1, and Spencer for denying Dorn due process in connection with the issuance of a false disciplinary ticket and subsequent disciplinary hearing.

**Count 2:** Fourteenth Amendment claim against Weitekamp, Lahr, and Baylor for the mishandling of Dorn's grievances.

**Count 3:** Eighth Amendment failure to protect claim against Vouhn, John Doe 4, Hale, Hill, John Doe 3, Wrangler, and Uraski.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Count 1

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). When an inmate raises a procedural due process claim based on false charges and related to disciplinary proceedings, the Court undertakes a two-part analysis. *Id.* The Court first evaluates whether the prisoner was deprived of a protected liberty interest, and then second, evaluates whether the process she was afforded was constitutionally deficient. *Id.* (citing *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)).

Here, Dorn has not sufficiently pled that she was deprived a liberty interest that required due process. Following the issuance of the false disciplinary ticket and improper hearing, Dorn was punished with 20 days of day room restriction. (Doc. 1, p. 21). This does not amount to the deprivation of a liberty interest which required due process procedures. *See Lekas v. Briley,* 405 F.3d 602, 610-11 (7th Cir. 2005) (90 days in segregation—56 of which were disciplinary—combined with a "drastic reduction" in yard/gym privileges did not amount to a loss of liberty); *Hoskins v. Lenear,* 395 F. 3d 372, 375 (7th Cir. 2005) (no liberty interest in grade status or commissary privileges). Therefore, Dorn has failed to plead she was denied due process prior to a

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

liberty deprivation, thus Count 1 is dismissed.

## Count 2

Dorn claims that employees of the ARB Weitekamp, Lahr, and Bayler failed to comply with administrative directives and hear her grievances. (Doc. 1, p. 28). She asserts Lahr wrongly sent the grievance back to her as improperly filed when grievance regulations allow for grievances regarding protective custody to be filed directly with the ARB. (*Id.* at p. 16). Weitekamp did not properly investigate the grievance because Weitekamp did not know Dorn's history of threats against Dorn's life and believed the Internal Affairs Unit at Lawrence when they told her there was no threat to Dorn's safety. (*Id.* at p. 16). Bayler wrongfully denied Dorn's grievances. Specifically, he denied the grievance Dorn submitted regarding being spit on and punched by inmate Minor by incorrectly stating she had not included a date. Bayler ignored Dorn's requests to be transferred to protective custody at Pontiac.

Count 2 also does not survive screening. Standing alone, the mishandling of inmate complaints by grievance officials does not state a constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Therefore, Count 2 is dismissed.

## Count 3

In order for a plaintiff to succeed on a failure to protect claim, the plaintiff must plead that she was incarcerated under conditions posing a substantial risk of serious harm, and that the defendant acted with "deliberate indifference" to that danger. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). A plaintiff also must allege that

prison officials were aware of a specific, impending, and substantial threat to her safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In other words, the defendant had to know that there was a substantial risk that those who attacked plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001).

Dorn claims that grievance officials Hale and Hill failed to protect her because they did not look into her history and see if a threat against her could exist and failed to take corrective measures to prevent harm. (Doc. 1, p. 32-33). This is not sufficient to plead that Hale and Hill acted with deliberate indifference towards a risk of harm to Dorn. Prison officials incur no liability under Section 1983 if they fail or refuse to investigate a prisoner's complaints or grievances. *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005). And "[p]rison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance." *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). Accordingly, Count 3 is dismissed as to Hale and Hill.

Count 3 is also dismissed as to Placement Officer John Doe 3. Dorn claims John Doe 3 violated federal law by failing to obey state regulation regarding cell placement. John Doe 3 tried to place inmate Philip in a cell with Dorn putting her life in imminent danger. (Doc. 1, p. 33). These allegations also do not state an Eighth Amendment claim. Section 1983 "protects plaintiffs from constitutional violations, not violations of state law." *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003). Thus, John Doe 3's failure to follow state regulation when celling Dorn does not rise to the level of a constitutional violation. Further, John Doe 3 did not actually house Dorn with Philip. When John Doe 3 went to move Philip into Dorn's cell, Philip refused housing, and John Doe 3 placed Philip in a different cell. For these reasons, Count 3 will not proceed against John Doe 3.

Dorn states that she met with Officer Vouhn of the Internal Affairs Unit in June or July

2021 and alerted him to the general threat to her safety by members of the Vice Lords. (Doc. 1, p. 17). She claims that Vouhn knew the threat to her safety and failed to take corrective measures to prevent harm. (*Id.* at p. 29). Because he did not do his job, Dorn states she was assaulted and spit on by Minor. (*Id.* at p. 18). Again, this does not state a constitutional claim. Dorn spoke with Vouhn in the spring of 2021 and the attack against her by Minor did not occur until around May 2022. (*Id.* at p. 23). Vouhn's failure to act in the face of a generalized threat does not plead deliberate indifference. Count 3 is dismissed against Vouhn.

Dorn claims that if Lieutenant Wrangler had done his job correctly, she would not have been spit on and assaulted by Minor. (Doc. 1, p. 23). Dorn claims that Minor was involved in three other fights with inmates prior to assaulting her, and nothing was done. Again, this is not sufficient to state constitutional claim. "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). Here, Dorn complains generally that because she was housed in a unit with Minor, who was known to be violent, Wrangler knew she was in danger. Dorn does not assert that she specifically alerted Wrangler that she believed Minor was a danger to her safety or that Wrangler was even present during the attack. Accordingly, Count 3 is dismissed as to Wrangler.

Dorn claims that Internal Affairs Officer John Doe 4 failed to protect her by not recording a "keep away" order in her file regarding inmate Philip. (Doc. 1, p. 19). Even though she informed him her life was in danger if she was celled with Philip. (*Id.*). This does not rise to the level of deliberate indifference. It doesn't appear that Dorn spoke to John Doe 4, other than this single occasion, and "[i]t is the reasonably preventable assault itself, rather than any fear of assault" that gives rise to a failure to protect claim. *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996). Count

3 is dismissed as to John Doe 4.

Finally, Count 3 is also dismissed as to Uraski. Dorn states that following the attack by Minor, Uraski lied to her about being approved for protective custody, and instead, she was transferred to Hill Correctional Center. (Doc. 1, p. 25-26). Dorn states that Uraski acted in bad faith and neglected to provide her safety and security. Although, Dorn was not transferred to the facility of her choice. She has failed to plead facts to support an assertion that Uraski acted with deliberate indifference towards a specific and impending threat to her safety.

### State Law Claims

Against each defendant, Dorn brings state law claims of official misconduct, negligence, dereliction of duty, and intentional infliction of emotional distress. Because Dorn has failed to state a viable constitutional claim pursuant to Section 1983, the Court declines to exercise supplemental jurisdiction over any remaining state law claims that may or may not be sufficiently pled.

### LEAVE TO AMEND

Because all claims for relief against the named Defendants have been dismissed, the Complaint does not survive preliminary review and shall be dismissed without prejudice. Dorn will be given an opportunity to replead her claims in an amended complaint.

### TEMPORARY RESTRAINING ORDER

On January 24, 2023, Dorn filed documents titled "Order to Cause for an Injunction a Temporary Restraining Order" and "Declaration in Support of Plaintiffs Motion for a Temporary Restraining Order and Preliminary and Permanent Injunction." (Doc. 11). The next day, Dorn filed a motion seeking the status of her temporary restraining order. (Doc. 12). On January 31, 2023, Dorn filed an affidavit stating she filed a motion for a temporary restraining order in this case back in November 2022 and is still awaiting a ruling. (Doc. 13).

The Court has reviewed the docket. Along with the Complaint, Dorn's motion for a

temporary restraining order ("TRO") was submitted to the Court in the middle of her exhibits and thus, was filed as an exhibit and not as a separate pleading. Dorn also filed a memorandum in support of her motion for a TRO on November 9, 2022, that was not filed as a motion. (Doc. 10). Now that the Court has been alerted to the requests for emergency relief, the Clerk of Court will be directed to refile pages 8-35 of Doc. 1-3 separately as a motion for temporary restraining order and/or preliminary injunction. The Court will address the Motion for TRO and/or a Preliminary Injunction now, along with the supplemental documents later filed with the Court. (Doc. 10, 11, 13).

In order to obtain relief, whether through a temporary restraining order ("TRO") or a preliminary injunction, Dorn must demonstrate that: (1) her underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) she will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Additionally, "a preliminary injunction is appropriate only if it seeks relief of the same character sought in the underlying suit, and deals with a matter presented in that underlying suit." *Daniels v. Dumsdorff*, No. 19-cv-00394, 2019 WL 3322344 at *1 (S.D. Ill. July 24, 2019) (quoting *Hallows v. Madison Cty. Jail*, No. 18-cv-881-JPG, 2018 WL 2118082, at *6 (S.D. Ill. May 8, 2018) (internal citations omitted)). *See also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Bird v. Barr,* 19-cv-1581 (KBJ), 2020 WL 4219784, at *2 (D.C. Cir. July 23, 2020) (noting that a court "only possesses the power to afford preliminary injunctive relief that is related to the claims at issue in the litigation").

In the motion for TRO and/or a preliminary injunction, Dorn brings allegations regarding her safety against staff at Hill Correctional Center, where she is currently incarcerated. She states

that she has received verbal threats of physical violence by two different inmates and has moved cells over fifteen times. She is on a list to be transferred to Centralia Correctional Center ("Centralia"), which has a special housing unit and program for transgender inmates, but because she refuses her housing assignments due to concerns for her safety, she receives disciplinary tickets. Dorn will only be eligible to transfer unless she has a clean disciplinary record. Dorn seeks injunctive relief in the form of expungement of her disciplinary record, demotion of defendants, and immediate transfer to Pontiac protective custody or to Centralia.

The Court has found that the Complaint, as currently drafted, fails to state a claim, which makes it impossible for Dorn to prove that she is likely to succeed on the merits of her claims. Accordingly, Dorn's request for emergency injunctive relief is denied. However, even if the Complaint had survived preliminary review, the motion for TRO and/or preliminary injunction deals with matters outside the allegations of the Complaint. The motion contains completely new allegations regarding the unsafe conditions at Dorn's new correctional facility, and the claims are asserted against staff members who are not named as defendants in this case. A motion for a TRO or preliminary injunction is not a proper avenue for Dorn to add claims and individuals to this lawsuit. For these reasons, the motion is denied. Dorn may renew the request in connection with a viable claim in any amended complaint she wishes to submit.

The motion for status and the motion for a status hearing are denied in light of this Order. (Doc. 12, 14).

### MOTION FOR APPOINTMENT OF COUNSEL

Dorn has also filed a Motion for Recruitment of Counsel (Doc. 3). There is no constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). Federal district courts have discretion under 28 U.S.C. § 1915(e)(1) to request counsel to assist pro se litigants. *Id.* When presented with a request to

appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

With regard to the first step of the inquiry, Dorn does not provide the Court with any information regarding her attempts to obtain counsel. For this reason, the motion is denied without prejudice. Should Dorn choose to move for recruitment of counsel at a later date, the Court directs her to include in the motion the names and address of at least three attorneys she has contacted, and if available, attach the letters from the attorneys who declined representation.

### DISPOSITION

For the reasons stated above, the Complaint is **DISMISSED** without prejudice for failure to state claim for relief pursuant to Section 1915A.

The Motion to Appoint Counsel is **DENIED.** (Doc. 3). The Motions and requests for a Temporary Restraining Order and/or Preliminary Injunction are **DENIED.** (Doc. 1-3; Doc. 10; Doc. 11; Doc. 13). The Motions for Status and the Motion for Status Hearing are **DENIED** in light of this Order. (Doc. 12; Doc. 14). The Clerk of Court is **DIRECTED** to refile pages 8-35 of Doc. 1-3 separately as a motion for temporary restraining order and/or preliminary injunction.

Dorn is **GRANTED** leave to file a "First Amended Complaint" on or before **March 6, 2023**. Should Dorn fail to file a First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to state claim, failure to comply with a court order, and/or for failure to prosecute her claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2).

It is strongly recommended that Dorn use the civil rights complaint form designed for use

in this District. She should label the form, "First Amended Complaint," and she should use the case number for this action (No. 22-cv-02378-SPM). To enable Dorn to comply with this Order, the **CLERK** is **DIRECTED** to mail her a blank civil rights complaint form.

An amended complaint generally supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The First Amended Complaint must stand on its own without reference to any previous pleading. The First Amended Complaint is also subject to review pursuant to 28 U.S.C. § 1915A.

Finally, Dorn is **ADVISED** that she is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in her address; the Court will not independently investigate her whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:   February 6, 2023

 *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**