IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES DORN, #N90855, | |
| Plaintiff, | Case No. 22-cv-02378-SPM |
| v. | |
| ROB JEFFREYS, MARK WILLIAMS, LIEUTENANT WRANGLER, LIEUTENANT CROUSE, GARZA, LINBOOM, LITTLE, SERGEANT MOORE, LEDBETTER, HAAS, BENNETT, GRAVEL, SCHENKEL, URASKI, and BAYLOR, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

     Plaintiff James Dorn, a transgender inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of her constitutional rights that took place at Pinckneyville Correction Center and Hill Correctional Center. The Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief

must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE FIRST AMENDED COMPLAINT

Plaintiff alleges that in the spring of 2022, she was housed in 5 House, B Wing at Pinckneyville Correctional Center ("Pinckneyville"). (Doc. 17, p. 51). In April 2022, an inmate named Minor, who was also housed in the same wing as Plaintiff, assaulted another inmate who identifies as transgender. (*Id.* at p. 8, 35). Lieutenant Wrangler witnessed the first incident and allowed the inmates to continue fighting. Eventually, Wrangler told the inmates to "lock up." (*Id.* at p. 8). Plaintiff wrote to Wrangler about the incident and told Wrangler that she did not feel safe around Minor, but she did not receive a response. (*Id.* at p. 52). On May 3, 2022, Minor spit on another transgender inmate and tried to fight the inmate because the inmate refused to "be with him." Wrangler spoke to Minor, but again, no disciplinary action was taken against Minor, and Minor remained housed in B Wing. (*Id.*).

On May 15, 2022, Minor spit on Plaintiff and told her that "she is a disgrace to Vice Lords." (Doc. 17, p. 36). Minor then "beat up" Plaintiff. (*Id.* at p. 36, 48, 52). On May 27, 2022, Plaintiff was interviewed by Internal Affairs Officer Uraski about the incident. (*Id.* at p. 36). Uraski asked Plaintiff if she feared for her life, and Plaintiff said yes. Uraski told Plaintiff that he was going to place her under investigation until she will be transferred to Pontiac Correctional Center ("Pontiac") under protective custody. The transfer did not occur, and Plaintiff was transferred to Hill Correctional Center ("Hill"). (*Id.*).

On or around June 2022, after her transfer, Plaintiff gave a letter to Officer Little requesting to speak to Lieutenant Crouse of the Internal Affairs Unit at Hill. (Doc. 17, p. 36). In the letter, Plaintiff explained that she had been a high-ranking member of the security threat group, the Vice

Lords. Once she "was found out to be homosexual," a hit was placed on her life. Plaintiff wrote in the letter that for the last three years she has felt like she has been running for her life. (*Id.*). Plaintiff explained that prior to being transferred to Hill, she was spit on at Pinckneyville because she is disliked by other members of the Vice Lords. (*Id.* at p. 38).

That same month, Plaintiff asked Officer Little about the status of her transfer to protective custody at Pontiac. (Doc. 17, p. 37). Little told Plaintiff that she was transferred to Hill on a disciplinary transfer and that Hill does not have protective custody. (*Id.* at p. 38). Little informed Plaintiff about the PRISM program at Centralia Correctional Center for transgender inmates. Little told Plaintiff that when he came back from his July 4th break, then he would talk to Plaintiff's counselor and Schenkel, a mental health staff member, about getting Plaintiff transferred to the PRISM program. Little also told Plaintiff that in the meantime, he would transfer her to a building where she would have no problems. (*Id.*).

In July, Plaintiff was threatened by an inmate named Tru. (Doc. 17, p. 39). Tru had stabbed an inmate in the jaw and then told Plaintiff that she was next. Around August 25, 2022, Tru was let out of restrictive housing and moved to the same wing as Plaintiff. One day when Plaintiff was returning from lunch, Tru pointed his finger in Plaintiff's face and said he was "going to kick [her] ass." Plaintiff's cellmate told Bennett, the wing officer, about the incident. (*Id.* at p. 39-40). Later that day, Plaintiff was informed that Tru had been "moved off the wing." Plaintiff left her cell and spoke to Bennett personally. (*Id.* at p. 40). Bennett told Plaintiff to write to the Internal Affairs Unit. Plaintiff then asked to speak to a crisis team member. A mental health staff member was called. Plaintiff also asked to speak to Little. Plaintiff told Little about the most recent threat, and Little said he was "washing his hands of her." (*Id.*).

Plaintiff spoke to Lieutenant Crouse around July 20, 2022, about her life being in danger and her request to be transferred to Pontiac protective custody. (Doc. 17, p. 41). Crouse said he

would look into it, but Plaintiff never heard back from Crouse. (*Id.*).

On September 8, 2022, Plaintiff was moved to a new cell house. (Doc. 17, p. 41). At the new cell house, Plaintiff asked to see Lieutenant Jones and showed Jones a paper signed by Schenkel. The paper designated Plaintiff as transgender and stated that Plaintiff was supposed to be housed in a one-person cell. (*Id.*). Jones called Schenkel about the paper. (*Id.* at p. 42). Schenkel stated she had never seen the paper and in all her years at Hill, she has never granted a transgender person and single cell. Schenkel told Jones that Plaintiff must have forged her signature. Schenkel wrote Plaintiff a disciplinary report for falsifying her signature on the form. (*Id.*).

Plaintiff states that Schenkel was supposed to submit her name to the PRISM program back in July 2022. Schenkel, however, waited to submit her name until Plaintiff had already refused housing three times due to fear for her safety. (Doc. 17, p. 42-43). By this time, Plaintiff's grade status had been demoted to C-grade, and Plaintiff could not participate in the program due to her C-grade status. (*Id.*). Plaintiff asserts that Schenkel and Little advised her that if she feared for her life, then she should refuse housing. (*Id.* at p. 23). For repeatedly refusing housing, however, Plaintiff has been at C-grade status for over thirteen months. Furthermore, when she refuses housing her TV, tablet, hot pot, and headphones are taken, until she goes before the Adjustment Committee. She is also locked in a cell for most of the day and is only allowed to leave for a shower. (*Id.*).

On January 24, 2023, Plaintiff refused housing again and was told she was moving to cell OR 55. (Doc. 17, p. 43). Plaintiff told Gravel that OR 55 had plumbing problems, and Gravel told Plaintiff it did not matter. After moving to the cell, the next day Gravel came and told Plaintiff that her toilet was leaking into the cell below. A plumber and a lieutenant came to the cell. (*Id.* at p. 43). The lieutenant told Gravel to move Plaintiff to a different cell. (*Id.* at p. 44). After packing her property, Plaintiff told Gravel that she was ready to move. Gravel stated that he did not care what

the lieutenant said, "this is his wing and he's not going to move the Plaintiff nowhere[sic]." For a week, the water was turned off in Plaintiff's cell and she was unable to flush her toilet. (*Id.*).

## SEVERANCE AND TRANSFER

Plaintiff asserts claims for violations of her constitutional rights that allegedly occurred while she was incarcerated at two different correctional facilities. As a result, the Court must determine whether the claims are properly joined or, if improperly joined, should be severed or dismissed. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Federal Rule of Civil Procedure 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Therefore, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *See George*, 507 F.3d at 607. Federal Rule of Civil Procedure 21 grants district courts broad discretion when deciding whether to sever claims or to dismiss improperly joined defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The alleged constitutional violations that occurred at Pinckneyville and Hill not only took place at two different facilities, but they involve different defendants and arise from separate transactions and occurrences. The only common defendants are IDOC Director Jeffreys and Administrative Review Board Member Baylor who allegedly mishandled grievances written while Plaintiff was incarcerated at both institutions. (*See* Doc. 17, p. 25-26). Their involvement in Plaintiff's claims that occurred at Pinckneyville and Hill is not enough to bring the allegations under the same umbrella. The matter is further complicated by the fact that Pinckneyville is located within this judicial district, while Hill is located within the Central District of Illinois. Accordingly, consistent with *George v. Smith* and Federal Rules of Civil Procedure 20 and 21, the Court will

sever the claims that occurred at Hill against Jeffreys, Williams, Crouse, Garza, Linboom, Little, Moore, Ledbetter, Haas, Bennett, Gravel, Schenkel, and Baylor into a separate action and transfer the new action to the proper venue. The remaining claims, which occurred while Plaintiff was at Pinckneyville against Wrangler, Uraski, Jeffreys, and Baylor shall be addressed in this case and reviewed pursuant to Section 1915A.

## DISCUSSION

Based on a review of the First Amended Complaint and Plaintiff's articulation of her claims, the Court designates the following counts:

Count 1: Eighth Amendment failure to protect claim against Wrangler, Uraski, Jeffreys, and Baylor.

Count 2: Claim under 18 U.S.C. § 922 against Wrangler for failure to obey state regulations.

Count 3: State law claims against Wrangler and Uraski.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claim that is mentioned in the First Amended Complaint that occurred at Pinckneyville but not addressed in this Order is considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

## Count 1

In order for a plaintiff to succeed on a failure to protect claim, the plaintiff must plead that she was incarcerated under conditions posing a substantial risk of serious harm, and that the defendant acted with "deliberate indifference" to that danger. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Pinkston v. Madry,* 440 F.3d 879, 889 (7th Cir. 2006). A plaintiff also must allege that

---

[1] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

prison officials were aware of a specific, impending, and substantial threat to her safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In other words, the defendant had to know that there was a substantial risk that those who attacked plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001).

Plaintiff has sufficiently stated a claim against Defendant Wrangler for failure to protect. Plaintiff alleges that Wrangler was the lieutenant of Plaintiff's housing wing at Pinckneyville and was aware that inmate Minor was assaulting inmates who identify as transgender. Wrangler, however, allowed Minor to remain in the same housing unit as Plaintiff, resulting in Plaintiff being spit on and "beaten up" by Minor. Count 1 will proceed against Wrangler for failing to protect Plaintiff from attack by another inmate on May 15, 2022.

Count 1 will be dismissed as to Uraski for similar reasons stated in the original Merit Review Order. (Doc. 15, p. 10). Plaintiff claims that Uraski failed to protect her by not placing her to protective custody at Pontiac, and instead, Uraski transferred her to Hill. (Doc. 17, p. 28). This is not sufficient to state a claim for failure to protect. The Eight Amendment is not violated when:

> [A] prisoner is put in fear of assault by other inmates, or even when a prisoner is actually assaulted. It is violated only when correctional officials know of a substantial risk to the prisoner and, through intention or deliberate indifference to the prisoner's safety, fail to take reasonable steps to prevent injury.

*See DeJesus v. Peters,* 92 C 0387, 1997 WL 392000, at *3 (N.D. Ill. July 9, 1997) (citations omitted). There are no allegations that Uraski knew of a specific threat to Plaintiff's safety at Hill and transferred her there anyways. The First Amended Complaint states that Plaintiff told Uraski that Minor spit on her because she is a disgrace to the Vice Lords and that she feared for her safety at Pinckneyville. (Doc. 17, p. 9). A failure to protect claim requires more than "general allegations of fear or the need to be removed." *Klebanowski v. Sheahan,* 540 F. 3d 633, 639 (7th Cir. 2008). Additionally, failure to transfer Plaintiff to the facility of her choice does not violate the

constitution. (Doc. 15, p. 10). *See i.e. Olim v. Wakinekona*, 461 U.S. 238, 245 (1983)(Inmates have no justifiable expectation to be incarcerated in any particular prison); *Johnson v. Barry*, 815 F.2d 1119, 1121 (7th Cir. 1987) (plaintiff had no protected expectation to either stay at his facility or avoid transfer to a facility with more severe rules); *Robertson v. Jeffreys*, 2023 WL 2777933, at *1 (C.D. Ill. April 4, 2023) (no constitutional right to transfer); *Jackson v. Brookhart*, 2021 WL 1146984, at *3 (S.D. Ill. March 25, 2021) ("there is no constitutional right for a prisoner to be housed in a particular institution or placement."). For these reasons, Plaintiff's Eighth Amendment failure to protect and deliberate indifference claims against Uraski for not transferring Plaintiff to Pontiac are dismissed.

The Court also dismisses the failure to protect claims against IDOC Director Jeffreys and Administrative Review Board Member Baylor. Plaintiff asserts that Baylor refused to hear Grievance #1414-05-22 dated May 17, 2022, concerning Wrangler's conduct and the assault on Plaintiff by Minor. In reviewing the grievance, Baylor wrongly stated that he had already addressed the issue in responding to a different grievance on May 31, 2022. (Doc. 17, p. 25). Plaintiff states that she is suing Jeffreys because he signed his name and concurred with Baylor's decision to deny her grievance. (*Id.* at p. 26).

These allegations do not state claim for an Eighth Amendment violation against either Defendant. Grievance #1414-5-22 was written after Plaintiff was spit on and assaulted by Minor and received by the Administrative Review Board in July 2022, after Plaintiff had already been transferred to Hill. Thus, Jeffreys and Baylor cannot be held responsible for failing to protect Plaintiff from Minor when they were not informed of the problem until months after the assault occurred. Furthermore, generally, a prison official "who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance." *Owens v. Evans,* 878 F. 3d 559, 563 (7th Cir. 2017). Accordingly, Count 3 is dismissed as to Jeffreys and

Baylor.

## Count 2

Count 2 brought under 18 U.S.C. § 922 for Wrangler's failure to obey state law is dismissed with prejudice. (*See* Doc. 17, p. 27). Section 922 is a criminal statute dealing with unlawful possession and sales of firearms. The statute does not provide for a private cause of action. *See Price v. Indy Trading Post,* No. 19-cv-001267-JMS-TAB, 2019 WL 2010197, at *4 (S.D. Ind. May 7, 2019) (discussing that Section 922(d) does not create a federal civil cause of action).

## Count 3

Plaintiff purports to bring state law claims against Wrangler for "official misconduct, dereliction of duty, negligence, conspiracy, and intentional infliction of severe emotional distress," but she offers only a conclusory statement which does not state a claim. Thus, these state law claims are dismissed without prejudice as to Wrangler. (Doc. 17, p. 27-28).

Plaintiff brings similar state law claims against Uraski, which are also dismissed as conclusory. Even if Plaintiff had stated a colorable state law claim against Uraski, however, the Court would not exercise supplemental jurisdiction over her state law claims since she did not state a viable federal claim against Uraski.

## DISPOSITION

### *Severance and Transfer*

**IT IS HEREBY ORDERED** that the claims against Jeffreys, Williams, Crouse, Garza, Linboom, Little, Moore, Ledbetter, Haas, Bennett, Gravel, Schenkel, and Baylor for the events that occurred at Hill Correctional Center are **SEVERED** into a new case. In the new case, the Clerk of Court is **DIRECTED** to file the First Amended Complaint (Doc. 17) and the Motion for Leave to Proceed in forma pauperis (Doc. 2). Once the newly severed action is opened, pursuant to 28 U.S.C. §§ 1391(b) and 1404(a) and on the Court's own motion, the Clerk of Court is

**ORDERED** to transfer the action to the United States District Court for the Central District of Illinois for such further proceedings as that court may deem appropriate. 28 U.S.C. § 93(b).

**IT IS FURTHER ORDERED** that the only claims remaining in this action are the claims asserted against Wrangler, Uraski, Jeffreys, and Baylor for events that occurred at Pinckneyville Correctional Center (designated as Counts 1, 2, and 3). The Clerk of Court is **DIRECTED** to terminate Williams, Crouse, Garza, Linboom, Little, Moore, Ledbetter, Haas, Bennett, Gravel, and Schenkel as defendants in this action.

*Merit Review Under Section 1915A*

**IT IS HEREBY ORDERED** that **COUNT 1** shall proceed against Wrangler and is dismissed without prejudice as to Uraski, Jeffreys, and Baylor. **COUNT 2** is **DISMISSED with prejudice**. **COUNT 3** is **DISMISSED without prejudice.** Because there are no surviving claims against Uraski, Jeffreys, and Baylor, the Clerk of Court is **DIRECTED** to terminate them from this action as defendants.

The Clerk of Court **SHALL** prepare for Wrangler the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to the defendant's place of employment. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above

or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant Wrangler is **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant Wrangler should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that she is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in her address; the Court will not independently investigate her whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:   October 17, 2023

                                                *s/Stephen P. McGlynn*
                                                **STEPHEN P. MCGLYNN**
                                                **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.