IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES DORN,<br><br>                **Plaintiff,**<br><br>v.<br><br>ERIC WANGLER,<br><br>                **Defendant.** | Case No. 22-cv-02378-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a motion for summary judgment filed by Defendant Wangler. (Doc. 43). Defendant argues that Plaintiff Dorn failed to exhaust her administrative remedies prior to filing this lawsuit. Dorn filed a response in opposition to the motion. (Doc. 43). For the reasons set forth below, the motion for summary judgment is denied.

### BACKGROUND

Plaintiff Dorn is a transgender woman and an inmate of the Illinois Department of Corrections (IDOC). She is currently incarcerated at Menard Correctional Center and filed this case pursuant to 42 U.S.C. §1983 for violations of her constitutional rights that occurred while she was housed at Pinckneyville Correctional Center. In the First Amended Complaint, Plaintiff alleges that in the spring of 2022, another inmate named Minor, who was housed in the same housing wing as Plaintiff, assaulted two other transgender inmates. (Doc. 17). Defendant Wangler, the lieutenant for the housing wing, knew that Minor was assaulting inmates who identify as transgender, but Wangler did not subject Minor to disciplinary action or move Minor or Plaintiff to a different housing unit. On May 15, 2022, Minor spit on Plaintiff and told her that "she is a disgrace to Vice Lords." Minor then "beat up" Plaintiff. (*Id.*). Pursuant to the Court's Section

1915A merit review order, Plaintiff is proceeding on an Eighth Amendment failure to protect claim against Defendant Lieutenant Wangler. (Doc. 21).

Defendant Wangler filed his motion for summary judgment on the issue of exhaustion on April 19, 2024. (Doc. 43). Plaintiff opposes the motion. (Doc. 45).

## LEGAL STANDARDS

### *I. Summary Judgment*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). The moving party is entitled to judgment as a matter of law when the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact. FED. R. CIV. P. 56(c).

### *II. Exhaustion of Administrative Remedies*

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry,* 286 F.3d

1022, 1025 (7th Cir. 2005).

### III. Grievance Procedures

As an inmate in the custody of IDOC, Plaintiff was required to follow the grievance procedure laid out in the Illinois Administrative Code (grievance procedures). 20 ILL. ADMIN. CODE § 504.800, *et seq*. Under the grievance procedures, an inmate commences the grievance process by first submitting a written grievance to an institutional counselor. 20 ILL. ADMIN. CODE § 504.810(a). The grievance must be filed within 60 days after the discovery of the incident, occurrence, or problem detailed in the grievance.

When a complaint is not resolved through a counselor, then the grievance is considered by a grievance officer, who must render a written recommendation to the chief administrative officer—the warden—within two months after receiving the written grievance, "when reasonably feasible under the circumstances." *Id.* § 504.830(e). The warden then reviews the findings and recommendations of the grievance officer and advises the offender of his or her final decision in writing. *Id.* Dissatisfied inmates may appeal the decision to the Administrative Review Bord (ARB) within 30 days after the date of the warden's decision. *Id.* § 504.850(a).

There are four circumstances where an inmate is required to file a grievance directly with the ARB, rather than first with the correctional institution, as discussed above. *Id.* § 504.870(a). As relevant here, an offender must submit a grievance directly to the ARB when grieving issues "that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues." *Id.* § 504.870(a)(4) (emphasis added).

### ANALYSIS

The parties agree that Plaintiff filed one grievance relevant to the Eighth Amendment claim in this case against Defendant Wangler. In Grievance #1414-05-22, dated May 17, 2022, Plaintiff grieves staff conduct and alleges that Lieutenant Wangler failed to respond to a risk of danger

between Plaintiff and Minor. (Doc. 45, p. 8). Plaintiff writes in the grievance that on May 15, 2022, she was beaten by Minor, which would not have happened if Wangler had "done his job." (*Id.*). Plaintiff received a response from the counselor on June 17, 2022. (*Id.*). Plaintiff was then transferred from Pinckneyville Correctional Center to Hill Correctional Center on June 23, 2022. (*Id.* at p. 10). About two weeks after the transfer, Plaintiff states that she received her property, including Grievance #1414-05-22. (*Id.* at p. 2). Plaintiff then sent the grievance directly to the ARB. (*Id.* at p. 3). The ARB received the grievance on July 11, 2022. (*Id.* at p. 4). The ARB chairperson responded to the grievance on July 29, 2022, noting that the original grievance with the grievance counselor and grievance officer's responses were needed, that the grievance was not in accordance with DR504F, and that "Staff conduct and security issues must be addressed by facility prior to ARB review." (*Id.* at p. 4).

Defendant Wangler argues that Grievance #1414-05-22 cannot serve to exhaust Plaintiff's claim. He states that contrary to the requirements of the grievance procedures, after receiving a response from the counselor, Plaintiff immediately appealed the grievance to the ARB, bypassing the grievance office for investigation and review by the grievance officer and chief administrative officer at the facility. (Doc. 43, p. 6). Plaintiff contends that after receiving the grievance back from the counselor while at Pinckneyville Correctional Center, she could not resubmit the grievance to the grievance office because she was in segregation and did not have access to pens, envelopes, or mail at that time. (Doc. 45, p. 2). After the transfer to Hill Correctional Center, Plaintiff states that she filed the grievance directly with the ARB because the grievance complained of events and conduct that occurred at another facility. (*Id.* at p. 3).

The Court agrees with Plaintiff that Grievance #1414-05-22 was properly filed with the ARB. The grievance procedures provide that when grieving about issues that "pertain to a facility other than the facility where the offender is currently assigned," the inmate must submit the

grievance directly to the ARB. 20 ILL. ADMIN. CODE § 504.70(a)(4). A direct appeal to the ARB under Section 507(a)(4) includes the type of situation presented here – one in which Plaintiff began the grievance process at Pinckneyville Correctional Center, but that process was interrupted by a transfer to Hill Correctional Center.[1] As the Seventh Circuit observed in *Chambers v. Sood,* "[w]hether by 'appeal' or through a fresh grievance raising a problem that occurred at an earlier-assigned facility, [Plaintiff] needed to submit the matter to the ARB." 956 F. 3d 979, 984 (7th Cir. 2020). Accordingly, Plaintiff properly followed the grievance procedures by filing the grievance with ARB once transferred and has exhausted the claim in this case.

## DISPOSITION

For the reasons stated above, the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 43) filed by Defendant Wangler is **DENIED**.

The stay on merits discovery is **LIFTED**, and the parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

DATED:   February 21, 2025

                                         *s/Stephen P. McGlynn*
                                         **STEPHEN P. MCGLYNN**
                                         **United States District Judge**

---

[1] The Court notes that Wangler does not argue that Plaintiff was required to seek secondary review with a grievance officer by a set deadline. *See Robinson v. Harris,* 2023 WL 4181224, at *5 n. 2 (S.D. Ill. June 26, 2023) (observing that the Illinois Administrative Code "does not say anything about how the grievance should be submitted to the grievance officer for second level review or the timeframe in which it must be done"). Thus, Plaintiff did not violate any grievance procedures by waiting approximately 20 days after receiving his response from the counselor to take the grievance to the next appropriate level, which in this case would be the ARB since Plaintiff had been transferred.