**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

JAMES DORN,

        **Plaintiff,**

v.

        **Case No. 22-CV-02378-SPM**

ERIC WANGLER,

        **Defendant.**

## <u>MEMORANDUM AND ORDER</u>

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendant Eric Wangler. (Doc. 55). Plaintiff James Dorn responded in opposition. (Docs. 57, 59). Having been fully informed of the issues presented, Defendant's Motion for Summary Judgment is **GRANTED**.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Dorn, a transgender[1] inmate currently incarcerated at Pontiac Correction Center in Illinois, filed the instant case on October 12, 2022. (*See* Doc. 1). Dorn has been continuously housed within the Illinois Department of Corrections ("IDOC") since 2001. (*See* Doc. 55, Ex. A, 8:22–10:4). Over the past five years, Dorn has been housed at multiple IDOC facilities, including Lawrence Correctional Center from June 2, 2020 to July 14, 2021; Pinckneyville Correctional Center from July 14, 2021 to June 23, 2022; Hill Correctional Center from June 23, 2022 to March 5, 2023;

---

[1] Plaintiff James Dorn is a biological male who identifies as a transgender woman. Plaintiff will be addressed by her requested pronouns she/her.

and Menard Correctional Center from March 5, 2023 to October 21, 2025. (*See id.*, Ex. B). Dorn alleges that Defendant Wangler, while serving as a lieutenant in Plaintiff's housing wing at Pinckneyville Correctional Center, failed to protect her from assault by another inmate, including from being spat upon. (*See* Doc. 17). Specifically, Dorn contends that Wangler was on notice based on prior alleged attacks against transgender inmates, letters sent to him, and a conversation with Dorn. (*See* Doc. 59, pp. 4–5).

This Court screened Plaintiff's original Complaint pursuant to 28 U.S.C. § 1915A and dismissed it without prejudice on February 6, 2023. (*See* Doc. 15). The operative First Amended Complaint was filed on February 22, 2023. (*See* Doc. 17). The First Amended Complaint asserted various claims against officials at both Pinckneyville Correctional Center and Hill Correctional Center. (*See id.*). This Court screened the First Amended Complaint and severed the claims relating to the events at Hill Correctional Center; these claims were transferred to the United States District Court for the Central District of Illinois. (Doc. 21 (citing 28 U.S.C. §§ 93(b), 1391(b), 1404(a))). The only remaining claim in this case is a 42 U.S.C. § 1983 Eighth Amendment failure to protect claim against Defendant Eric Wangler, a lieutenant at Pinckneyville at all relevant times. (Doc. 55, ¶ 6 (citing *id.*, Ex. A, 27:5–20)).

Dorn's Eighth Amendment allegations stem from several incidents that she claims warranted protection from Wangler. The material facts surrounding these incidents are undisputed. (*See* Docs. 55, 59). The first incident occurred sometime in April 2022, when Dorn witnessed a fight between Inmate Minor and Inmate Ross, the latter of whom is another transgender individual and Dorn's close friend. (*See*

Doc. 55, Ex. A, 27:19–28–5). Minor allegedly attacked Ross while she was getting her hair cut. (*Id.*). The fight lasted approximately sixty seconds, and officers broke it up after being notified. (*Id.*, 39:14–16). Defendant Wangler was one of the officers present. (*Id.*, 39:19–24). Dorn did not contact Wangler concerning the alleged incident. (*Id.*, 38:19–40:3). Put another way, after this first incident, Dorn did not file correspondence of any kind with Wangler; critically, she did not express concerns either about perceived threats to her safety or about any specific, impending, and substantial threat. (*See id.*, 43:7–14). According to Dorn's Deposition in relation to the first incident, she "basically did nothing." (*Id.*).

The second incident occurred on May 3, 2022. (*See* Doc. 55, pp. 3–4). According to Dorn, Minor sexually assaulted Ross and then spat on Ross after she refused his advances. (*See* Doc. 55, Ex. A, 45:24–46:6). Dorn did not witness this incident and learned of it from Ross. (*Id.*, 44:24–45:9). Afterward, Dorn allegedly spoke with Wangler and asked why Minor remained in the same wing despite his alleged propensity to assault other transgender inmates. (*Id.*, 46:24–47:1). That same day, Dorn assisted Ross in writing a letter to Wangler describing the ongoing incidents involving Minor. (*Id.*, 48:12–20). In Ross's letter, she alleged that Minor was harassing transgender inmates, that no action had been taken, and she requested that Wangler remove Minor from 5 House. (*Id.*, 48:21–49:4). Subsequently, sometime between May 3 and May 15, 2022, Dorn alleges that she wrote her own letter to Wangler. (*Id.*, 50:9–19). Dorn placed the letter in her cell door but does not know who retrieved it. (*Id.*, 50:20–51:12). Dorn did not attach the letter to her Complaint, recreate its contents, or produce any evidence that Wangler ever read it. (*See* Doc. 17;

Doc. 55, Ex. A, 31:14–16, 32:25–33:2). Additionally, Dorn never followed up with Wangler regarding the letter, either in person or otherwise. (*Id.*, 31:17–19). Wangler never told Dorn that he had ever read or received a letter from her. (*Id.*, 52:8–10).

The third incident involved a direct altercation between Dorn and Minor. On May 15, 2022, both individuals stood in the chow line outside B Wing while heading to the lunchroom. (Doc. 55, p. 5; *id.*, Ex. A, 55:1–17). Dorn stood next to Minor and was speaking with Ross when Dorn felt spit on her arm. (*Id.*, Ex. A, 57:16–18). Dorn asked Minor whether he had spat on her, to which Minor responded, "Yeah, you a disgrace to Vice Lord." (*Id.*, 55:20–56:25). Dorn then grabbed Minor, and the two began to fight. (*Id.*, 57:16–18; 55:20–56:25). Officers immediately intervened and broke up the altercation. (*Id.*, 61:25–62:4). Dorn asserted that she had suffered facial lacerations from her altercation with Minor. (*Id.*, 65:17–20). Wangler was not present during the incident. (*Id.*, 60:7–14).[2]

Defendant Wangler's Motion for Summary Judgment was filed on January 21, 2026. (Doc. 55). Plaintiff initially responded on January 29, 2026. (Doc. 57). This Court permitted Plaintiff to file a supplemental response because her January 29, 2026 Response did not comply with Local Rule 56.1(b) in that it failed to address Defendant's Statement of Material Facts. (*See* Doc. 58). Plaintiff Dorn's

---

[2] In Plaintiff's Response to the pending Motion for Summary Judgment, Dorn asserts new facts when disputing Wangler's Statement of Undisputed Material Facts. (*See* Doc. 59). However, Dorn provides no evidentiary support for these assertions and instead offers additional facts without citations to specific portions of the record. *See* Local Rule 56.1(c) ("The Statement of Additional Material Facts must contain specific citation(s) to the record, including page number(s)."). As discussed, Dorn previously failed to comply with Local Rule 56.1 and was ordered to provide a supplemental response. (*See* Doc. 58). Because Dorn once more failed to comply with the Local Rules, this Court will not consider her unsupported statements.

Supplemental Response was filed on February 11, 2026. (Doc. 59). Wangler filed a Reply on March 5, 2026 (Doc. 61).[3]

## APPLICABLE LAW AND LEGAL STANDARDS

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008) (quoting *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008)).

---

[3] Dorn filed a sur-reply on March 30, 2025 (Doc. 61). This Court ordered it stricken from the record in accordance with Local Rule 7.1(a)(4). (*See* Doc. 62).

The nonmovant cannot simply rely on its pleadings; the nonmovant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391, 394 (7th Cir. 1993), *cert. denied,* 510 U.S. 1111 (1994); *Celotex*, 477 U.S. at 323–24).

ANALYSIS

## I.   Deliberate Indifference

"It is well settled that the Eighth Amendment requires correctional officials to protect inmates from certain dangers posed by other inmates." *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023) (citing *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "That does not mean, however, that a constitutional violation occurs every time an inmate gets into a fight." *Id.* "Failure to protect a prisoner from a known risk of harm constitutes an Eighth Amendment violation only if the defendants act with deliberate indifference—'something approaching a total unconcern for inmate safety.'" *Gibson v. Fox*, No. 24-2055, 2025 WL 586833, at *2 (7th Cir. Feb. 24, 2025) (citing *Hunter*, 73 F.4th at 565); *see also Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012); *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006); *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022).

"A 'deliberate indifference' violation has two components, one objective and one subjective." *Balsewicz v. Pawlyk*, 963 F.3d 650, 654 (7th Cir. 2020), *as amended* (July 2, 2020). "The objective component is that the prisoner must have been exposed to a harm that was objectively serious" and the "[t]he subjective component is that the

prison official must have known of and disregarded an excessive risk to the inmate's health or safety." *Id.* at 654–55 (citing *Farmer* at 834, 837–88; *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020)). In order to send an Eighth Amendment failure to protect claim to trial, the plaintiff must "marshal sufficient evidence from which a reasonable jury could find that (1) he was exposed to an 'excessive' risk of harm that actually materialized; (2) the defendants had actual knowledge of that risk; and (3) the defendants' response was so inadequate as to constitute deliberate indifference toward the risk." *Gibson*, 2025 WL 586833, at \*2 (7th Cir. Feb. 24, 2025) (citing *Hunter*, 73 F.4th at 565).

In his Motion for Summary Judgment, Wangler asserts that Dorn has failed to establish a genuine dispute of material fact as to the second element of deliberate indifference, whether Defendant had actual knowledge of the risk. (*See* Doc. 55, p. 10–11). Wangler argues that Dorn cannot establish that he possessed actual knowledge that Dorn feared for her life, either from written or face-to-face communication. (*Id.*). Wangler contends that Dorn acknowledged that she cannot prove he received or read the letter at issue. (*Id.*). Additionally, Wangler asserts that Dorn's conversation with him regarding why Inmate Minor remained housed in 5 House after the altercation with Ross on May 3, 2022 did not sufficiently communicate any fear for *Dorn's* safety. (*Id.*, p. 11). According to Wangler, Dorn's complaints about Inmate Minor were generalized and showed only that Dorn disliked Minor and objected to his alleged harassment of others. (*Id.*). Wangler, therefore, maintains that these statements did not place him on actual notice of a substantial risk of harm and cannot support a finding of deliberate indifference. (*Id.*). Plaintiff

responds that her conversation with Wangler, together with her identification as a member of an identifiable group of prisoners frequently singled out for violent attacks, was sufficient to place Wangler on notice of a substantial threat to her safety. (Doc. 59, p. 5).

Thus, the parties dispute the subjective prong of the deliberate indifference claim. *See Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). To succeed on the subjective prong, "the official must have actual, and not merely constructive, knowledge of the risk in order to be held liable." *Id*. The prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id*. "Although this inquiry focuses on an official's subjective knowledge, a prisoner need not present direct evidence of the official's state of mind: 'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . .'" *Id*. Therefore, Dorn's claim turns on whether Wangler possessed a subjective awareness that a substantial risk of harm existed.

In failure to protect cases, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison official about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (per curiam). However, complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger. *See Gevas*, 798 F.3d at 480–81 (collecting cases). Additionally, a prisoner sending communications to a prison official anywhere

Page 8 of 14

in the corrections hierarchy does not constitute adequate notice to the official. *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). The plaintiff still has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to "an excessive risk to inmate health or safety." *Id.* The Seventh Circuit provided the following colorful example: "picture an inmate with a cobra in his cell. If the prison officials 'know that there is a cobra there or at least that there is a high probability of a cobra there, and do nothing, that is deliberate indifference.'" *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (quoting *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995)). Thus, to survive summary judgment, Plaintiff Dorn must offer some admissible evidence that Defendant Wangler knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated in it. *See Vance*, 97 F.3d at 994.

When the Court reviews the summary judgment record as a whole, it becomes clear that Plaintiff Dorn has not met her burden to show a genuine dispute of material fact as to Defendant Wangler's knowledge. (*See* Doc. 55, Ex. A, 50:20–51:12, 61:2–7). At her Deposition, Dorn testified that she never told Wangler that there was a specific threat against her. (*See* Doc 55, Ex. A, 61:2–7). When asked if Wangler could have known that Minor would fight Dorn, she replied "[n]ot me, per se, but it was a possibility that Minor could put his hand on another transgender, yes, because he had done it already to two others." (*Id.*, Ex. A, 61:4–7). Dorn insists that she sent Wangler a letter requesting that Minor be transferred at some point after Minor assaulted Ross on May 3 and before the altercation between Minor and Dorn on May

15, 2022. (*Id.*, Ex. A,51:1–12). However, Dorn's Cumulative Counseling Summary does not list any grievances or communications related to the incident between Ross and Minor between May 3 and May 15, 2022. (*See* Doc. 60, Ex. B, p. 23).

Her further assertion that Wangler must have known about her grievances with Minor and the resulting risk of harm is equally unavailing. Dorn's contention that Wangler, as the "lieutenant of the building," necessarily would have been aware of the grievance rests on speculation, not evidence. (*See id.*, 33:22–34:7). The Seventh Circuit has expressly held that "speculation is insufficient to defeat a summary judgment motion" because it "cannot create a genuine issue of fact." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 946–47 (7th Cir. 2024). This conclusion is consistent with *Vance v. Peters*, in which the Seventh Circuit held that an inmate's claim failed because she did "not supply, in her description of the purported letter, any detail to permit the conclusion that the letter sufficiently advised the warden of the situation to require her intervention." 97 F.3d 987, 994 (7th Cir. 1996). The same logic applies here. Dorn has offered no evidence that Wangler actually received, read, or was otherwise sufficiently alerted by the May 2022 letter such that intervention would be required. *See id.* ("The lapses in her own testimony are not cured by other evidentiary submissions. There is no corroborative evidence with respect to the letters that Ms. Vance says that she sent to the defendant officials. She had no copy of a letter and no letter was produced from any other source.").

That being said, even if we do assume that Wangler received and read the alleged letter, Dorn has failed to establish that this letter described a threat against her, specifically. Dorn asserts that the letter was sent and contends that she could

not control the jail's mailing procedures once she placed the letter on the bars of her cell for collection. (Doc. 55, Ex. A, 32:14–20). Sending mail via the prison mail system supports an inference of receipt, even if the recipient denies ever receiving it. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 767 (7th Cir. 2021) (citing *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018)). However, even making this inference in Dorn's favor, Dorn admits that her purported letter contained only vague, nonspecific concerns that could not have put Defendant Wangler on notice of a specific threat to Dorn's safety; rather, she insisted that Minor's attack on Ross showed that Minor had demonstrated violent tendencies towards transgender individuals. (*See* Doc. 55, Ex. A, 50:20–51:12, 61:2–7).

The same is true of Dorn's alleged conversation with Wangler regarding Minor's presence on B-wing; this alleged interaction amounts to nothing more than a vague and generalized complaint rather than a specific warning of a threat against *her*. The context of this exchange arose after an incident involving Minor and Dorn's friend Ross. (*See id.*, 51:22–23). At her Deposition, Dorn explained that Minor had allegedly been harassing Ross shortly before this conversation occurred. (*See id.*, 45:22–47:1). According to Dorn, Minor attempted to "sexually touch" Ross, in which Ross rejected the advance, and Minor responded by spitting on Ross. (*Id.*). Dorn learned of this interaction and then approached Wangler about the situation. (*Id.*). During that brief encounter, Dorn asked Wangler why Minor was "still on the wing and steadily doing this to transgenders." (*Id.*). However, the conversation was fleeting and occurred immediately after Dorn returned from group. (*See id.*, 45:10–14). Dorn did not provide details about the alleged conduct beyond this generalized statement,

nor did she describe any specific threat directed toward her personally. Thus, Dorn's statement to Wangler—asking why Minor was still on the wing and complaining that he was "doing this to transgenders"—did not identify a specific threat directed toward Dorn herself, nor did it describe any imminent danger. (*Id.*, Ex. A, 46:24–47:1). Without evidence that Wangler personally knew of and disregarded a substantial risk of harm, Dorn cannot establish the personal involvement required for § 1983 liability. As the Seventh Circuit put it, "[a]s it turned out, there was a cobra lurking in the grass; the objective prong is satisfied. But that's not dispositive. The focus is on the defendants' subjective state of mind, and for all they knew, [the plaintiff] was being harassed by a garter snake. Irritating, yes. Deadly, no." *Dale*, 548 F.3d at 659.

In summary, when considering all of the evidence marshaled by the parties, it is clear that Dorn has failed to present genuine issues of material fact sufficient to rebut Wangler's Motion for Summary Judgment. Therefore, Defendant Wangler's Motion for Summary Judgment shall be granted.

## II.   Qualified Immunity

In the alternative, Wangler argues that he is entitled to qualified immunity. (*See* Doc. 55, p. 14). While the Court need not assess Wangler's qualified immunity argument by virtue of the fact that Dorn's Eighth Amendment claim does not survive Defendant's Motion for Summary Judgment, the Court will briefly discuss the applicability of qualified immunity to the instant facts.

Wangler asserts that government officials performing discretionary functions are shielded from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. (*Id.*, p. 14

(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))). He contends that he acted based on his understanding of the law and that imposing liability under these facts would require an impermissible expansion of existing law. (Doc. 55, at 14–15). Dorn responds that her deliberate indifference claim forecloses qualified immunity. (Doc. 59, p. 5–6).

"Qualified immunity is an affirmative defense, but once it is raised the burden shifts to the plaintiff to defeat it." *Holleman v. Zatecky*, 951 F.3d 873, 877 (7th Cir. 2020) (citing *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001)). "To overcome qualified immunity, the facts viewed in the light most favorable to [the plaintiff] must 'show that the defendant[s] violated a constitutional right' and that 'the right was clearly established at [that] time.'" *Id.* (quoting *Estate of Clark v. Walker*, 865 F.3d 544, 550 (7th Cir. 2017)). Notably, "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Henry*, 969 F.3d at 785 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "The right must be established not as a general proposition but in a particularized manner so its contours are clear to a reasonable official." *Id.* (citing *Reichle v. Howards*, 566 U.S. 658, 665 (2012)).

As assessed *supra*, even viewed in the light most favorable to her, Dorn's Eighth Amendment claim does not survive scrutiny and, thus, fails the first prong in the qualified immunity analysis. Regarding the second prong, prisoners do have the clearly established right to be safe from other inmates. *See Hunter*, 73 F.4th at 65 (citing *Farmer*, 511 U.S. at 833–34; *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

However, qualified immunity is a conjunctive test, and failure upon either element grants qualified immunity to the prison official. *See Thomas v. Carmichael*, 164 F.4th 1058, 1065 (7th Cir. 2026) (explaining the two-prong test and stating that "[i]f the answer under either prong is "no," immunity attaches and bars a claim"). Dorn's failure to establish a genuine dispute of a material fact as to Wangler's actual knowledge of a substantial risk of harm would have entitled Wangler to qualified immunity.

Therefore, because Dorn cannot demonstrate a constitutional violation, Wangler would be entitled to qualified immunity if Dorn's Eighth Amendment deliberate indifference claim had survived.

## CONCLUSION

For the reasons set forth above, Defendant Eric Wangler's Motion for Summary Judgment (Doc. 55) is **GRANTED**. This case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: April 22, 2026**

_____
**STEPHEN P. McGLYNN**
**U.S. District Judge**